```
                IN THE UNITED STATES DISTRICT COURT
                 FOR THE SOUTHERN DISTRICT OF OHIO
                          EASTERN DIVISION
```

Gary Allen Duffy,                :

      Plaintiff,              :

      v.                       :    Case No.  2:12-cv-57

Michael J. Astrue,               :    JUDGE GEORGE C. SMITH
Commissioner of Social Security,      Magistrate Judge Kemp

      Defendant.              :

                       REPORT AND RECOMMENDATION

                         I.  Introduction

    Plaintiff, Gary Allen Duffy, filed this action seeking review of a decision of the Commissioner of Social Security denying his application for social security disability benefits and granting his application for supplemental security income. Those applications were filed with protective filing dates of July 14, 2008 and August 25, 2008, respectively, and alleged that plaintiff became disabled on January 2, 2001.

    After initial administrative denials of his applications, plaintiff was given a video hearing before an Administrative Law Judge on March 12, 2010. In a decision dated June 23, 2010, the ALJ found that plaintiff was disabled and entitled to benefits only from August 25, 2008 forward. That became the Commissioner's final decision on November 23, 2011, when the Appeals Council denied review.

    After plaintiff filed this case, the Commissioner filed the administrative record on March 26, 2012. Plaintiff filed his statement of specific errors on April 24, 2012. The Commissioner filed a response on May 31, 2012. Plaintiff filed a reply brief on June 18, 2012, and the case is now ready to decide.

    II.  Plaintiff's Testimony at the Administrative Hearing

Plaintiff, who was 58 years old at the time of the administrative hearing and who has a college education, testified as follows.

Plaintiff served for three years in the military in the early 1970s. He last worked in 2000. At that he was managing several businesses but, due to what was ultimately diagnosed as bipolar disorder, became unable to function. He was diagnosed in 2003 after having been admitted to a VA hospital in Nevada. After about a year of relatively unsuccessful treatment he moved back to Ohio. Shortly thereafter, he was diagnosed with Hepatitis C. He also developed migraine headaches at that time. He has tried a number of different medications for bipolar disorder but has had many side effects, and that condition has gotten worse.

Currently plaintiff lives with his father. He is able to do some household chores occasionally but described his father as his "caretaker." In a typical week, he wakes up with a headache every day. He may accompany his father shopping but does not go into the stores due to not wanting to be around people. He will watch television or use the internet at times, but often does not leave his room and may not bathe for several days in a row. He did break his foot about a year before the hearing and was still having some problems going up and down steps.

In response to questioning from his attorney, plaintiff stated that he no longer has manic episodes but is depressed all the time. He also said that he suffers from nausea and vomiting every day and has done so since his 2003 hospitalization.

### III. The Medical Records

The medical records in this case are found beginning on page 269 of the administrative record. Because plaintiff's assignments of error relate exclusively to his psychological impairment and his Hepatitis C, and to the question of whether

either of both of those impairments should have been found to be severe, the Court will discuss only those records which relate to that issue, and will do so in the context of analyzing his statement of errors in Section VI below.

### IV. The Vocational Testimony

A vocational expert, Ms. Posey, also testified at the administrative hearing. She characterized plaintiff's past work as a computer systems manager analyst and stated that it was skilled work requiring frequent reaching and handling, occasional fingering, and frequent interaction with people. This job is classified by the DOT as sedentary but plaintiff performed it at the light exertional level. The skills which plaintiff acquired would transfef to the job of computer processing scheduler.

Ms. Posey was asked to assume that plaintiff could work at the medium exertional level and that his work would be limited to simple, routine and repetitive tasks performed in a low stress environment with only occasional decision-making or changes in the work setting, reduced production quotas, and only occasional superficial interaction with coworkers and the public. With those limitations, plaintiff could not perform any of his past work, but a person with those limitations could perform such jobs as laundry worker, car cleaner, groundskeeper or vehicle washer. If plaintiff were as limited as he testified due to bipolar disorder and migraine headaches, however, he could not work.

### V. The Administrative Law Judge's Decision

The Administrative Law Judge's decision appears at pages 25 through 36 of the administrative record. The important findings in that decision are as follows.

The Administrative Law Judge found, first, that plaintiff met the insured requirements of the Social Security Act for purposes of disability benefits through December 31, 2005. Next, she found that plaintiff had not engaged in substantial gainful

activity from his alleged onset date of January 2, 2001, through the date of the decision.  As far as plaintiff's impairments are concerned, the ALJ found that between the onset date and December 31, 2005, plaintiff suffered from only a single severe impairment, namely obesity.  Both his Hepatitis C and his bipolar disorder were found to be nonsevere.  As of August 25, 2008, the date that plaintiff filed his application for supplemental security income, the ALJ found that plaintiff suffered from obesity, cirrhosis of the liver, chronic Hepatitis C, migraine headaches, and bipolar disorder, all of which were severe, and a nonsevere left foot fracture.  The ALJ also found that these impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to the next step of the sequential evaluation process, the ALJ found that while insured, plaintiff had the residual functional capacity to perform a full range of work at the medium exertional level.  Beginning on August 25, 2008, however, he had the added restrictions described to the vocational expert, and also could not work a full eight-hour work day on a consistent basis due to migraine headaches and bipolar cycling.  Based on these findings, plaintiff could do his past relevant work during the entire time he was insured, but could do no work from August 25, 2008 forward.  As a result, the ALJ concluded that plaintiff had demonstrated an entitlement only to supplemental security income benefits beginning on that date.

VI.   Plaintiff's Statement of Specific Errors

In his statement of specific errors, plaintiff raises a single issue.  He argues that the ALJ failed to follow the "slight abnormality" standard when the ALJ determined that, prior to August 25, 2008, his bipolar disorder was not a "severe impairment."  The Court generally reviews the administrative

decision of a Social Security ALJ under this legal standard:

<blockquote>

Standard of Review. Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)). It is "'more than a mere scintilla.'" Id. LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976). The Commissioner's findings of fact must be based upon the record as a whole. Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985). Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

</blockquote>

In support of his statement of error, plaintiff focuses on evidence that his bipolar disorder was diagnosed as early as his May, 2003 hospitalization, and that various symptoms stemming from that disorder were noted in the hospital records, including lethargy, dysphoria, and a flat affect. After his release, records show additional treatment for rapid mood cycling, including treatment with medications. He also points to his

testimony that he had to stop working at the end of 2000 due to psychologically-based symptoms.  Finally, he argues that he had also been diagnosed with Hepatitis C, which affected his liver function and his ability to tolerate medications for his bipolar disorder, and that even if his bipolar disorder and Hepatitis C were not severe impairments, their impact on his functioning should still have been assessed in combination with his severe impairment (obesity).

In response, the Commissioner notes that plaintiff has not pointed out any limitations imposed by his bipolar disorder which the ALJ did not take into account in determining his residual functional capacity.  The Commissioner also recites evidence that plaintiff was generally not symptomatic before December, 2005, that a state agency reviewer found his bipolar disorder prior to that date not to be severe, and that the ALJ discounted some of plaintiff's testimony as not fully credible, a finding which plaintiff does not challenge.  Additionally, there is no medical evidence to contradict the state agency reviewer's finding.  On these bases, the Commissioner asserts that the ALJ's decision should be upheld.  In reply, plaintiff notes only that the ALJ appears not to have taken into account any limitations posed by his Hepatitis C and how that disease has made it more difficult to treat his bipolar disorder.  The reply memorandum does not identify any specific work-related limitations which the ALJ should have but, in plaintiff's view, did not impose, however.

The ALJ did note that after plaintiff was treated for detoxification and a mood disorder in 2003, he continued to have a mood disturbance.  However, his GAF, which was 38 when he was admitted to the hospital, improved to 65, indicative of only mild symptoms, upon discharge.  After discharge, records did not indicate any more than mild symptoms.  The ALJ also relied on the report from the state agency reviewer, Dr. Matyi, who found that

plaintiff did not have a severe mental impairment before December 31, 2005, and to the affirmance of that opinion by Dr. Rudy.  The ALJ noted that "[s]ignificant weight is given to these opinions as they are consistent with the evidence of record for the period prior to the claimant's dated (sic) last insured of December 31, 2005."  (Tr. 31).

Under social security law, a severe impairment or combination of impairments is one which significantly limits the physical or mental ability to perform basic work activities.  20 C.F.R. §404.1520(c).  Basic work activities relate to the abilities and aptitudes necessary to perform most jobs, such as the ability to perform physical functions, the capacity for seeing and hearing, and the ability to use judgment, respond to supervisors, and deal with changes in the work setting.  20 C.F.R. §404.1521(b).  The question of severity is not related to the plaintiff's age, education, or work experience.  A nonsevere impairment is one which would not be expected to interfere with a Plaintiff's ability to work regardless of "whether the claimant was sixty-years old or only twenty-five, whether the claimant had a sixth grade education or a master's degree, whether the claimant was a brain surgeon, a factory worker, or a secretary."  Salmi v. Secretary of H.H.S., 774 F.2d 685, 691-92 (6th Cir. 1985).

Plaintiff is not required to establish total disability at this level of the evaluation.  Rather, the severe impairment requirement is a threshold element which plaintiff must prove in order to establish disability within the meaning of the Act.  Gist v. Secretary of H.H.S., 736 F.2d 352, 357 (6th Cir. 1984); see also Social Security Ruling 86-8 (identifying the question of whether the claimant has a severe impairment as the second step of the sequential evaluation process).  An impairment will be considered nonsevere only if it

-7-

is a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience." Farris v. Secretary of H.H.S., 773 F.2d 85, 90 (6th Cir. 1985), citing Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984). The Commissioner's decision on this issue must be supported by substantial evidence. Mowery v. Heckler, 771 F.2d 966 (6th Cir. 1985). The severe impairment test has been upheld as a permissible interpretation of the Act. Bowen v. Yuckert, 482 U.S. 137 (1987). However, both that decision and applicable rulings indicate that it is not to be used routinely to deny benefits. Its use is restricted to those claimants with "slight abnormalities that do not significantly limit any 'basic work activity....'" Bowen v. Yukert, supra, at 158 (O'Connor, J., concurring). "Great care" must be used in applying the concept, and any doubt should be resolved in favor of continuing the sequential evaluation process so that vocational factors are taken into account. See Social Security Ruling 85-28.

Here, the Court agrees with the Commissioner that the ALJ had a substantial basis for finding that plaintiff's bipolar disorder (or depressive disorder) was not "severe" prior to December 31, 2005. First, no treating or examining source identified anything more than mild symptoms. The May, 2003 hospitalization was occasioned not by psychologically-based symptoms but by substance abuse. The ALJ correctly described the treatment records as indicating that by the date of discharge, plaintiff was experiencing only mild symptoms from any of his disorders. Notes from later in that year described plaintiff as "comfortable and happy with his medication regime,", Tr. 332, and he described himself as "stable" and his mood was "euthymic." Id. Notes from 2004 indicate no significant changes. Dr. Matyi relied on these records and similar records from 2005 in

concluding that plaintiff's condition during the insured period was "not severe." (Tr. 1278). And, contrary to plaintiff's arguments, there is nothing in any of the progress notes which seems to indicate that his Hepatitis C was interfering with the treatment of his psychological disorder. A reasonable person could have concluded from this record that plaintiff's bipolar disorder did not impose any significant limitation of functioning during this time period, either alone or in combination with his obesity and Hepatitis C, and that such an impairment was not severe.

Plaintiff is correct that an ALJ must consider the combined effect of all impairments of record, both severe and non-severe, in determining a claimant's residual functional capacity. See 20 C.F.R. §1545(a)(2)("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe' ... when we assess your residual functional capacity"). However, the Commissioner correctly points out that plaintiff's statement of errors does not identify what, if any, additional limitations resulted from his bipolar disorder prior to December 31, 2005. Further, it is worth noting that even if plaintiff had all of the psychological limitations described to the vocational expert except for the inability to work a full eight-hour day - limitations such as the ability to perform only simple, routine and repetitive tasks in a low stress environment with only occasional decision-making or changes in the work setting, reduced production quotas, and only occasional superficial interaction with coworkers and the public-the vocational expert identified a significant number of jobs which plaintiff could perform. Thus, to the extent that plaintiff may be arguing that these additional limitations, which are really not supported by any evidence of record which predates December 31, 2005, should

have been imposed, he still would not have qualified for benefits. Any error, if one was committed, is therefore harmless. Plaintiff's statement of errors lacks merit for all of these reasons.

## VII. Recommended Decision

Based on the above discussion, it is recommended that the plaintiff's statement of errors be overruled and that judgment be entered in favor of the defendant Commissioner of Social Security.

## VIII. Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge